IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


ANNA MARIE SALAZAR,

      Plaintiff,

vs.                                                              Civ. No. 16-271 KK

NANCY A. BERRYHILL,[1]
**Acting Commissioner of Social Security,**

      Defendant.


## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 16) filed December 15, 2016, in support of Plaintiff Anna Marie Salazar's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits and Title XVI supplemental security income benefits. On February 7, 2017, Plaintiff filed her Motion to Remand or Reverse ("Motion"). (Doc. 21.) The Commissioner filed a Response in opposition on May 17, 2017 (Doc. 27), and Plaintiff filed a Reply on June 1, 2017. (Doc. 30.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration. Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 6, 9, 11.)

# I. Background and Procedural Record

Claimant Anna Marie Salazar ("Ms. Salazar") alleges that she became disabled on October 1, 2009, at the age of thirty-one because of panic/anxiety attacks, post-traumatic stress disorder, major depression, cyst on left wrist, hip and back pain, insomnia, and fibromyalgia. (Tr. 242-45, 288.[3]) Ms. Salazar completed the ninth grade, and worked as a hotel night auditor, health department receptionist, retail sales representative, and waitress. (Tr. 289.)

On March 23, 2011, Ms. Salazar protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq.[4] (Tr. 162, 242-45.) Ms. Salazar's application was initially denied on August 11, 2011. (Tr. 162, 221-24.) It was denied again at reconsideration on July 30, 2012. (Tr. 150, 212-14.) On December 20, 2012, Ms. Salazar requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 209.) The ALJ conducted a hearing on January 10, 2014. (Tr. 577-605.) Ms. Salazar appeared in person at the hearing with attorney Helen Lopez. (*Id.*) The ALJ took testimony from Ms. Salazar (Tr. 580-99), and an impartial vocational expert ("VE"), Judith Beard. (Tr. 599-604.) On March 14, 2014, the ALJ issued an unfavorable decision. (Tr. 136-49.)

On March 4, 2016, the Appeals Council issued its decision denying Ms. Salazar's request for review and upholding the ALJ's final decision. (Tr. 3-6.) On April 7, 2016, Ms. Salazar timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 16) that was lodged with the Court on December 16, 2016.

[4] The ALJ's determination indicates that on March 31, 2011, Ms. Salazar protectively filed an filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. The Administrative Record does not contain Ms. Salazar's Title XVI application and/or denials.

## II. Standard of Review

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Commissioner's decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

In considering an application for disability insurance benefits, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan v. Barnhart,* 399 F.3d 1257, 1261 (10th Cir. 2005). If the claimant successfully meets that burden, the burden of proof shifts to the Commissioner at step five to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age,

education, and work experience. 20 C.F.R. §§ 404.1520(a)(v), 416.920(a)(v); *Grogan*, 399 F.3d at 1261.

### III. Analysis

The ALJ made his decision that Ms. Salazar was not disabled at step five of the sequential evaluation. He found that Ms. Salazar had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that

> it should involve no more than incidental public contact; she can perform detailed but not complex work instructions; and she can perform no more than frequent reaching, handling, or fingering.

(Tr. 143.) Based on the RFC and the testimony of the VE, the ALJ concluded that Ms. Salazar was incapable of performing her past relevant work, but that there were jobs that existed in significant numbers in the national economy that the claimant could perform. (Tr. 148.)

Ms. Salazar asserts several arguments in support of her Motion. Ms. Salazar argues that (1) the ALJ erred at step three by failing to properly consider treating psychiatrist Margaret Conolly, M.D.'s medical source statement regarding Ms. Salazar's ability to do work-related mental activities; (2) the ALJ erred at step five by failing to state the correct burden of proof; (3) the ALJ failed to determine whether the VE's testimony was consistent with the DOT; (4) the Appeals Council erred in rejecting new additional evidence; (5) the ALJ erred in rejecting treating physician opinions; (6) the ALJ's RFC and credibility assessments were contrary to the legal standards and not supported by substantial evidence; and (7) the ALJ failed to develop the record by recontacting Ms. Salazar's treating physicians, if necessary. (Doc. 23 at 10-28.) The Court finds grounds for remand as discussed below.

### A.     <u>Opinion Evidence and RFC Assessment</u>

Ms. Salazar argues that the ALJ erred in weighing the opinion evidence. In particular, she asserts that the ALJ improperly weighed her treating physician opinions, and improperly accorded great weight to the State Agency medical consultant opinions when their opinions were rendered well before her treating physician opinions. (Doc. 23 at 19-25.) She further asserts that the ALJ's RFC assessment is not supported by substantial evidence because it was based on the outdated State Agency opinions and ignored the contemporaneous treating physician opinions that demonstrated greater functional limitations. (*Id.* at 25-27.) The Court agrees.

#### 1.     <u>Physical Impairments</u>

##### a.     <u>Martin Trujillo, M.D.</u>

On August 8, 2011, Ms. Salazar presented to examining State Agency medical consultant Martin Trujillo, M.D., for a disability determination examination. (Tr. 486-88.) Ms. Salazar reported a history of significant posterior neck, shoulder, and upper back pain, along with headaches. (Tr. 486). She also reported a history of depression, anxiety, and posttraumatic stress disorder. (*Id.*) She told Dr. Trujillo she was diagnosed with fibromyalgia approximately five months earlier by her primary care physician, but was unaware of trigger point pain or laboratory values done to rule out rheumatological or autoimmune disorders. (*Id.*) Dr. Trujillo's physical exam was essentially unremarkable, and he noted there was "no tenderness to muscle palpation or specific trigger point pain." (Tr. 487.) Dr. Trujillo's impression included, *inter alia*, depression/anxiety, PTSD, possible bipolar disorder, and possible fibromyalgia. (*Id.*) Dr. Trujillo discussed that Ms. Salazar's primary problem was her psychiatric status and its

relationship with her somatic complaints. (Tr. 488.) He recommended, *inter alia*, a psychiatric and rheumatological evaluation.[5] (*Id.*)

The ALJ determined that Dr. Trujillo's physical exam supported his RFC assessment.[6] (Tr. 147.)

### b. Misbah Zmily, M.D.

On December 23, 2013, Ms. Salazar began treating with primary care physician Misbah Zmily, M.D. (Tr. 564-66.) Her chief complaints were migraine headaches and an inability to sleep well. (Tr. 564.) She reported a decline in her health, weakness, fatigue, and headaches. (Tr. 565-66.) On physical exam, Dr. Zmily noted, *inter alia*, diffuse tenderness over the trigger points of fibromyalgia. (Tr. 565-66.) Dr. Zmily completed a Fibromyalgia Questionnaire and diagnosed Ms. Salazar with fibromyalgia based on a complete history, physical exam, and complete blood work up. (Tr. 301-02.) He assessed her prognosis as fair. (Tr. 302.) Dr. Zmily also completed an Exertional Limitations form and assessed that Ms. Salazar could occasionally lift and/or carry less than 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk for less than 2 hours in an 8 hour workday; sit for less than about 6 hours in an 8 hour workday; must periodically alternate sitting and standing to relieve pain or discomfort; must periodically lie down during the day; and has limited push and/or pull in the upper and lower

---

[5] There is no evidence in the Administrative Record that the recommended evaluations were completed. However, nonexamining State Agency psychological consultant Elizabeth Chiang, M.D., noted at reconsideration that "[a]ttempts were made to gather additional information and a physical and psych CE were scheduled," but that Ms. Salazar "did not keep either of these appointments despite reminders and her confirmation that she would attend." (Tr. 318.)

[6] The ALJ did not expressly weigh Dr. Trujillo's opinion. The ALJ stated he gave limited weight to the opinions of the nonexamining state agency physicians as to the nature and severity of Ms. Salazar's physical impairments and functioning, who determined her physical impairments were not severe. (Tr. 146.) The ALJ stated he gave greater accommodation to Ms. Salazar's subjective complaints of pain, and stated that his physical RFC assessment was supported by Dr. Trujillo's report of Ms. Salazar's generally unremarkable physical examination. (Tr. 146-147.)

extremities.  (Tr. 300.)  Dr. Zmily based his assessment on Ms. Salazar's diffuse muscle ache and pain.  (*Id.*)

Ms. Salazar saw Dr. Zmily again January 7, 2014, February 4, 2014, and March 4, 2014, although the ALJ did not have the benefit of these records.[7]  (Tr. 567-59, 570-72, 573-75.)  Dr. Zmily noted diffuse tenderness over the trigger points of fibromyalgia, along with diffuse muscle tenderness, physical exam.  (*Id.*)  Dr. Zmily consistently assessed fibromyalgia, fatigue, migraines, generalized anxiety disorder, and irritable bowel syndrome.  (*Id.*)  His treatment plan included prescribing Relafen, Topamax, Flexeril, Klonopin, and Depakote.  (*Id.*)

The ALJ accorded little weight to Dr. Zmily's opinion.  (Tr. 146.)  He explained that Dr. Zmily completed the Fibromyalgia Questionnaire and Exertional Limitation forms after having seen Ms. Salazar for the first time, and that there was no indication of what treatment, if any, he prescribed.  (Tr. 146.)  The ALJ further explained that the limitations Dr. Zmily assessed were overly restrictive in view of the claimant's ability to drive a car, go to church and to stores, care for her five month old son, and perform activities of daily living independently.  (Tr. 146.)  The ALJ also explained that while Dr. Zmily circled all possible tender point sites on the fibromyalgia diagram, Dr. Trujillo reported that Ms. Salazar did not have tenderness to muscle palpation or specific trigger points.  (*Id.*)

---

[7] In seeking review of the ALJ's determination, Ms. Salazar submitted additional evidence that included treatment notes from Dr. Zmily (La Familia Primary Care) dated December 23, 2013, *through January 14, 2016*.  The Appeals Council made the La Familia Primary Care records dated December 23, 2013, through March 4, 2014, a part of the record because they were dated prior to the ALJ's determination.  (Tr. 7.)  The Appeals Council determined that the records after that date were not related to the relevant period of time.  (*Id.*)

7

### 2. Mental Impairments

#### a. Suzanne Castro, Psy.D.

On August 5, 2011, State agency nonexamining psychological consultant Suzanne Castro, Psy.D., reviewed Ms. Salazar's medical records[8] and prepared a Psychiatric Review Technique Form ("PRTF") and a Mental Residual Functional Capacity Assessment ("MRFCA"). (Tr. 489-500.) In Section I of the MRFCA, Dr. Castro assessed that Ms. Salazar was *slightly limited* in her ability (1) to remember locations and work-like procedures; (2) to understand and remember very short and simple instructions; (3) to carry out very short and simple instructions; (4) to sustain an ordinary routine without special supervision; (5) to make simple work-related decisions; (6) to ask simple questions or request assistance; (7) to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (8) to respond appropriately to changes in the work setting; (9) to be aware of normal hazards and take appropriate precautions; (10) to travel in unfamiliar places or use public transportation; and (11) to set realistic goals or make plans independently of others. (Tr. 489-91.) Dr. Castro also assessed that Ms. Salazar was *moderately limited* in her ability to (1) understand and remember detailed instructions; (2) to carry out detailed instructions; (3) to maintain attention and concentration for extended periods; (4) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) to work in coordination with or in proximity to others without being distracted by them; (6) to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a

---

[8] Dr. Castro reviewed records from the Family Practice of Raton from August 2008 through July 2010 demonstrating Ms. Salazar's history of depression, insomnia and anxiety. (Tr. 502, 509-511.) Dr. Castro reviewed records related to Ms. Salazar's short inpatient stay for suicidal attempt . (Tr. 502, 509, 513.) Dr. Castro reviewed Ms. Salazar's treating psychiatrist Dr. Margaret Conolly's notes from October 2010 through May 2011. (Tr. 502, 524, 525, 526, 527-29.)

8

consistent pace without an unreasonable number and length of rest periods; (7) to interact appropriately with the general public; (8) to accept instructions and respond appropriately to criticism from supervisors; and (9) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*) In Section III of the MRFCA, Dr. Castro explained that

> [c]laimant retains the capacity to understand, remember, and carry out simple, routine instructions; relate appropriately to co-workers, supervisors, and the general public on a superficial basis; utilize reasonable judgment in work-like settings; and sustain the level of attention/concentration necessary to complete a routine workday of detailed tasks without significant interruptions from psychologically-based symptoms.

(Tr. 491.)[9]

The ALJ accorded significant weight to Dr. Castro's and Dr. Chiang's assessments with regard to the nature and severity of Ms. Salazar's mental impairments and functioning. (Tr. 147.)

### b. Margaret Conolly, M.D.

On August 6, 2010, Ms. Salazar sought mental health treatment at Tri-County Community Services, Inc., following a recent admission to Miners' Colfax-Medical Center for suicidal ideation, depression, and an open wound to her left wrist. (Tr. 513, 515.) On October 18, 2010, she was evaluated by psychiatrist Margaret Conolly, M.D. (Tr. 466-68.) Dr. Conolly noted Ms. Salazar's histories,[10] conducted a mental status exam, and assessed post-traumatic stress syndrome, a five year history of recurrent major depression, and daily panic attacks. (Tr. 468.) Dr. Conolly indicated Axis I diagnoses of major depressive disorder, PTSD,

---

[9] On July 30, 2012, State agency nonexamining medical consultant Elizabeth Chiang, M.D., reviewed Ms. Salazar's medical records at reconsideration. (Tr. 318.) Dr. Chiang affirmed Dr. Castro's August 5, 2011, mental assessment. (Tr. 318.)

[10] History of Present Illness, Substance Abuse History, Past Psychiatric History, Social History, Family History and Medical History. (Tr. 527-28.)

and panic disorder, and assigned a GAF score of 40.[11] (*Id.*) Dr. Conolly prescribed Sertraline and Gabapentin, and instructed Ms. Salazar to follow up with psychotherapy. (*Id.*) Ms. Salazar saw Dr. Conolly six more times over the next year during which time Dr. Conolly consistently identified Ms. Salazar's mood as dysphoric and anxious, although noted some improvement and fair and/or partial clinical benefit from the prescribed medications. (Tr. 455, 457, 459, 461, 464, 465.) Ms. Salazar was discharged on November 8, 2011, due to non-compliance with her treatment plan. (Tr. 452.)

Thirteen months later, on December 17, 2012, Ms. Salazar returned to Tri-County Community Services, Inc., and was reevaluated by Dr. Conolly. (Tr. 304-06.) Dr. Conolly noted Ms. Salazar's histories,[12] conducted a mental status exam, and assessed a long history of major depression and manic episodes, and PTSD. (Tr. 306.) Dr. Conolly indicated Axis I diagnoses of bipolar disorder, PTSD, and assigned a GAF score of 40. (Tr. 306.) Dr. Conolly prescribed a trial of Depakote, and instructed Ms. Salazar to follow up with psychotherapy. (*Id.*)

On January 2, 2013, Ms. Salazar reported poor tolerance of Depakote with no clinical benefit as yet. (Tr. 307.) On mental status exam, Dr. Conolly indicated Ms. Salazar's mood was dysphoric and anxious. (*Id.*) Dr. Conolly assessed that Ms. Salazar "remains depressed." (*Id.*) She discontinued the Depakote and prescribed a trial of Topiramate. (*Id.*) Dr. Conolly indicated Axis I diagnoses of bipolar disorder and PTSD. (*Id.*)

---

[11] The GAF is a subjective determination based on a scale of 100 to 1 of "clinician's judgment of the individual's overall level of functioning." *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 32. GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.,* depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). *Id.* at 34.

[12] History of Present Illness, Substance Abuse History, Past Psychiatric History, Social History, Family History and Medical History. (Tr. 304-05.)

On March 11, 2013, Ms. Salazar reported she was pregnant and had stopped all of her medications. (Tr. 308.) Ms. Salazar reported her depression as 9/10. (*Id.*) On mental status exam, Dr. Conolly indicated Ms. Salazar's mood was dysphoric, and that she had poor memory and attention. (*Id.*) Dr. Conolly assessed severe depression. (*Id.*) She instructed Ms. Salazar to continue off her medications during the pregnancy and lactation, unless severely compromised by bipolar disorder. (*Id.*) She also instructed Ms. Salazar to follow up with psychotherapy. (*Id.*) Dr. Conolly indicated Axis I diagnoses of bipolar disorder and PTSD, and assigned a GAF score of 40. (*Id.*)

On October 14, 2013, Ms. Salazar complained of mood swings and anxiety. (Tr. 310.) She reported her depression as 7-8/10. (*Id.*) On mental status exam, Dr. Conolly indicated Ms. Salazar's mood was dysphoric, and that she had poor memory and attention. (*Id.*) Dr. Conolly assessed bipolar depression and financial stressors. (*Id.*) Dr. Conolly instructed Ms. Salazar to resume Depokote and prescribed a trial of Clonidine. (*Id.*) She instructed Ms. Salazar to follow up with psychotherapy. (*Id.*) Dr. Conolly indicated Axis I diagnoses of bipolar disorder and PTSD, and assigned a GAF score of 40. (*Id.*)

On December 16, 2013, Ms. Salazar reported mood swings and anxiety. (Tr. 314.) She reported her depression as 9/10. (*Id.*) On mental status exam, Dr. Conolly indicated Ms. Salazar's mood as dysphoric and that she had poor memory and attention. (*Id.*) Dr. Conolly noted partial clinical benefit from the prescribed medications. (*Id.*) Dr. Conolly increased the Depokote dosage and prescribed a trial of Topamax. (*Id.*) Dr. Conolly instructed Ms. Salazar to follow up with psychotherapy. (*Id.*) Dr. Conolly indicated Axis I diagnoses of bipolar disorder and PTSD, and assigned a GAF score of 40. (*Id.*)

On December 16, 2013, Dr. Conolly prepared a Medical Source Statement of Ability To Do Work-Related Activities (Mental) and assessed that Ms. Salazar had *slight limitations* in her ability to (1) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and (2) be aware of normal hazards and take appropriate precautions. (Tr. 316) Dr. Conolly assessed that Ms. Salazar had *moderate limitations* in her ability to (1) understand and remember very short and simple instructions; (2) carry out very short and simple instructions; (3) ask simple questions or request assistance; (4) travel to unfamiliar places or use public transportation; and (5) set realistic goals or make plans independently of others. (*Id*). Dr. Conolly assessed that Ms. Salazar had *marked limitations* in her ability to (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) maintain attention and concentration for extended periods; (5) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; (6) sustain an ordinary routine without special supervision; (7) work in coordination with or in proximity to others without being distracted by them; (8) make simple work-related decisions; (9) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (10) interact appropriately with the general public; (11) accept instructions and respond appropriately to criticism from supervisors; (12) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (13) respond appropriately to change in the work setting. (*Id.*)

The ALJ determined that Dr. Conolly's opinion was not entitled to controlling weight because "it was not well supported by medically acceptable clinical and laboratory diagnostic

techniques and [was] inconsistent with the other substantial evidence in the case record." (Tr. 147.) The ALJ then accorded little weight to Dr. Conolly's opinion and explained that

> [a]lthough Dr. Conolly is a psychiatrist and first saw the claimant in October 2010, there are significant gaps in the treatment relationship. Most notably, the claimant did not see Dr. Conolly (or any other mental health provider) from August 2011 until December 2012 (Ex. 1F/2598). Dr. Conolly restarted her medications for just a few months, but then she had to stop taking them against after she became pregnant. However, she was able to restart her medications in October 2013, after her son was born (Ex. 1F/252).
>
> Dr. Conolly's treatment notes document that the claimant responded well to medications and that her symptoms of anxiety and depression were stable while she was compliant with treatment. For example, in February 2011, Dr. Conolly's assessment was "residual mild depression, anxiety" (Ex. 1F/38). In March 2011, Dr. Conolly characterized the claimant's depression as "moderate" (Ex. 1F/39). Dr. Conolly noted in May 2011 that the claimant had only "residual" anxiety and was "much less depressed" (Ex. 1F/40). Mr. Callaway, the therapist who worked with Dr. Conolly, indicated on a form dated January 6, 2011, that the claimant's condition was "stabilized but requires on-going psychiatric care" (Ex. 1F/103). Dr. Conolly assessed "residual insomnia and daytime anxiety" on June 9, 2011 (Ex. 1F/103). On July 7, 2011, Dr. Conolly noted only "mild anxiety" (Ex. 1F/105).

(Tr. 147.)

The ALJ failed to properly weigh the treating physician opinions. As for Dr. Zmily's opinion, the ALJ explained that he accorded it little weight because Dr. Zmily only saw Ms. Salazar for the first time on the date he completed the Fibromyalgia Questionnaire and Exertional Limitation forms. However, even if Dr. Zmily had only seen Ms. Salazar one time, which he did not,[13] a one-time consultative examination is not a valid basis for rejecting an opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (finding that a limited treatment history by itself is an invalid basis for rejecting a medical source opinion). Moreover, one-time

---

[13] *See* fn. 7, *supra*.

13

consultative exams are often fully relied on as the dispositive basis for RFC findings.[14] *Id.* As for the ALJ's other reason; *i.e.,* that there was no indication of what treatment, if any, Dr. Zmily prescribed, Dr. Zmily's subsequent treatment notes indicated a treatment plan that included medications to address Ms. Salazar's medical conditions.[15] (Tr. 567-69, 570-72, 573-75.) As such, the ALJ's reasons are not supported by substantial evidence and are an invalid basis for rejecting Dr. Zmily's opinion.

As for Dr. Conolly's opinion, the ALJ provided boilerplate language for not according her opinion controlling weight, but failed to explain why Dr. Conolly's opinion was not supported by medically acceptable clinical techniques. "Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, *e.g.,* abnormalities of behavior, mood, thought, memory, orientation, development, or perception. Psychiatric signs must be shown by observable facts that can be medically described and evaluated." POMS DI 24501.020.A.[16] Here, Dr. Conolly performed mental status exams at every appointment with Ms. Salazar and consistently observed her mood as dysphoric and anxious. (Tr. 307, 308, 310, 314, 455, 457, 459, 461, 464, 465, 467.) Dr. Conolly further observed on some occasions that Ms. Salazar had poor memory and attention. (Tr. 308, 310, 314.) Moreover, Dr. Conolly's Axis I diagnoses consistently indicated major depressive disorder, PTSD, panic disorder, and bipolar disorder, and a persistent GAF Score of 40. (Tr. 306, 307, 308, 310, 314, 455, 457, 459, 461, 464, 465, 468.) The ALJ failed to explain why he deemed the observable facts that Dr.

---

[14] Ironically, the ALJ relied on examining State Agency medical consultant Dr. Martin Trujillo's one-time consultative exam to support his physical RFC assessment. (Tr. 147.)

[15] Dr. Zmily's treatment plan included Relafen, Flexeril, Topamax, Klonopin, and Depokote. (Tr. 567-69, 570-72, 573,75.)

[16] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999).

14

Conolly medically described in her treatment notes were not well supported by medically acceptable clinical techniques and then, in turn, why he determined they provided an insufficient basis for her opinion. Additionally, the basis of Dr. Conolly's assessment and diagnoses; *i.e.,* Ms. Salazar's long history of depression, anxiety and PTSD, was well documented and consistent with other substantial evidence in the record, contrary to the ALJ's determination it was not. (Tr. 301-02, 412, 486-88,[17] 508-11, 513, 514, 515, 516-19, 567-69, 570-72, 573-75.) Lastly, the ALJ's explanation in according Dr. Conolly's opinion little weight failed to address any of Dr. Conolly's 2012/2013 records that indicated a deterioration in Ms. Salazar's mental condition. An ALJ, in addition to discussing the evidence supporting his decision, must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1266 (10th Cir. 2005). The ALJ failed to discuss this probative evidence or provide legitimate reasons for rejecting it. This is error.

Finally, the ALJ failed to weigh the State Agency opinions in light of the more recent treating physician opinions that suggested a deterioration of Ms. Salazar's physical and mental conditions. *See, e.g., Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 544 (10th Cir. 1987) (an ALJ must not discount a treating physicians' opinion as to the claimant's deteriorating condition in favor of the treating physician's prior finding that the claimant would be able to return to work). Dr. Zmily's opinion regarding Ms. Salazar's functional limitations to do work-related physical activities and Dr. Conolly's opinion regarding Ms. Salazar's functional

---

[17] On August 8, 2011, examining State Agency medical consultant Martin Trujillo, M.D., whose opinion the ALJ relied on to support his physical RFC assessment, noted depression/anxiety, PTSD, and possible bipolar disorder as part of his impression. (Tr. 487.) Dr. Trujillo discussed that Ms. Salazar's primary problem was her psychiatric status. (Tr. 488.) "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1203, 1208 (10th Cir. 2007).

15

limitations to do work-related mental activities *postdate* Dr. Trujillo's and Dr. Castro's opinions by *two years and four months*. Nowhere in his determination does the ALJ address how the more recent medical evidence of Ms. Salazar's deteriorating condition might have impacted Dr. Castro's[18] or Dr. Trujillo's opinions. *See Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (noting the significance of a recent physician's examination which found more limitations than an examination by another physician two years prior). Nor does the ALJ demonstrate that he considered the relative age of the State Agency opinions when he accorded them great weight.

For the foregoing reasons, the ALJ erred in his evaluation of the treating physician opinions of Dr. Zmily and Dr. Conolly, and further erred in rejecting their opinions in favor of the State Agency opinions of Dr. Trujillo and Dr. Castro absent a legally sufficient explanation for doing so. *Id.* "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(1) and (2), and SSR 96-6p, 1996 WL 374180, at *2)). Additionally, the evidence the ALJ relied on to assess Ms. Salazar's physical and mental RFC does not adequately support his determination. This is reversible error. "[T]he ALJ must make specific findings" regarding the claimant's residual functional capacity for work activity, *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996), that are "supported by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

---

[18] Dr. Conolly's 2012/2013 treatment notes were not available to either Dr. Castro or Dr. Chiang when they reviewed the evidence at the initial and reconsideration stages of Ms. Salazar's claim and assessed her ability to do work related mental activities.

16

B. **Remaining Issues**

The Court will not address Ms. Salazar's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

IV. **Conclusion**

For the reasons stated above, Ms. Salazar's Motion to Remand or Reverse (Doc. 21) is **GRANTED.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**